# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| ROZENA MILLER | CIVIL ACTION NO. 16-1256 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| RED RIVER ENTERTAINMENT OF SHREVEPORT, LLC | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Record Document 14] submitted by Defendant, Red River Entertainment of Shreveport, LLC, d/b/a Sam's Town Hotel and Casino ("Sam's Town"), which prays for this Court to dismiss all claims brought against it by Plaintiff, Rozena Miller ("Miller"). Also pending are two Motions to Strike [Record Documents 18 & 22]. Upon consideration of the briefs filed by the parties and for the reasons stated below, Defendant's Motion for Summary Judgement is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion to Strike [Record Document 18] is also **GRANTED IN PART** and **DENIED IN PART**, and Defendant's Motion to Strike [Record Document 22] is **DENIED**.

## BACKGROUND

Plaintiff began working as a housekeeper for Harrah's Casino in 1997, and when Sam's Town acquired the property in 2004, she worked for Sam's Town as a custodian. Record Documents 14-3 & 17-6. She continued her employment with Sam's Town until her termination on March 14, 2015. See Record Document 17-4, p. 8. As a custodian for Sam's Town, Plaintiff worked the graveyard shift starting at 11:00 p.m. and ending at 7:00 a.m.

on Friday and Saturday, and from 11:00 p.m. to 6:00 a.m. on Monday through Thursday. Record Documents 14-3 & 17-6.

In July 2013, Plaintiff sought and was approved to take intermittent FMLA leave. Record Document 14-2, pp. 11-12. She claims that, at first, she was using her leave approximately one day each month, but by the time she was terminated, she was using 4-6 days per month. Record Document 17-1, p. 1.

In February 2015, Sam's Town began an investigation into its graveyard shift employees as a result of two anonymous written complaints that detailed employee misconduct. Record Documents 14-3 & 17-6. At least nine employees were terminated as a result of this investigation, including Plaintiff. At the time of her termination, Plaintiff was 53 years old. Record Document 17-4, p. 8.

Based on the foregoing facts, Plaintiff filed this suit against Sam's Town alleging discrimination because of her age and disability, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964[1] ("Title VII"), 42 U.S.C. § 2000e et seq., and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. In light of her claims, Defendant filed this Motion for Summary Judgment.

---

[1] Defendant correctly notes that Plaintiff's claim for disability discrimination is not actionable under Title VII, but is instead properly brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.

## STANDARD

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See id. at 322-323.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the

critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. Little, 37 F.3d at 1075.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

Defendant argues that Plaintiff cannot establish a prima facie case for any of her claims.

### 1. Age Discrimination

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The parties have argued their respective positions under the McDonnell Douglas burden-shifting framework. See Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Under this framework, Plaintiff must first establish a prima facie case of discrimination. Then, the burden shifts to Defendant to produce evidence that Plaintiff was terminated for a

nondiscriminatory reason. If this burden is met, Plaintiff must then show the legitimate reason offered by the Defendant was not its true reason, but was pretext for discrimination. Id. at 378 n.12 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142–43 (2000)). "It is at this third stage that the plaintiff must demonstrate that age was the 'but-for' cause of the defendant's employment decision, notwithstanding the defendant's putative non-discriminatory reason for the decision." Dubea v. Sch. Bd. of Avoyelles Par., 546 F. App'x 357, 360 (5th Cir. 2013) (citing Reed v. Neopost USA, Inc., 701 F.3d 434, 439–40 (5th Cir. 2012)).

To prove a prima facie case of age discrimination, Plaintiff must show that she was: (1) discharged; (2) qualified for the position; (3) within the protected age group at the time of the discharge; and (4) either replaced by someone younger or outside the protected class, or otherwise discharged because of her age. Phillips v. Leggett & Platt, Inc., 658 F.3d 452, 455 (5th Cir. 2011) (citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004)). The only element disputed by Defendant is the last. Defendant argues that Plaintiff does not know whether she was replaced by someone younger and has no evidence that she was otherwise discharged because of her age.

As to Plaintiff's replacement, Defendant represents that several custodians were hired, but none specifically to replace Plaintiff. Record Document 5, p. 3. Plaintiff claims that her replacement is unknown because Defendant fired and hired multiple employees over the six-month period after her termination. Record Document 17, p. 4. Plaintiff then states that three of the individuals hired "were close to [her] age, and two of them were

terminated within 2 hours of hire." Id. Without further explanation, Plaintiff claims she has alleged a prima facie case of age discrimination.

Plaintiff cites Defendant's discovery responses as her source of information regarding employees hired after her termination. These responses show that between March 2015 and December 2015, Defendant hired five custodians: Mary Taylor, age 54; Michelle Edden, age 61; Angela Cooper, age 46; Naudius Bolden, age 31; and Rosemary Miller, age 51. Record Document 17-3, pp. 3-4. Plaintiff was 53 years old at the time of her termination; thus, two of the five individuals hired were older than Plaintiff at the time she was terminated. While Defendant's discovery responses indicate that Michelle Edden was terminated the same day she was hired, they also indicate that Mary Taylor, the other individual hired in 2015 who was older than Plaintiff, remains an active employee.[2] Id. Furthermore, Defendant cites Plaintiff's deposition testimony wherein she admits that she does not know who replaced her, but "just believe[s] it was someone younger than [her]." Record Document 14-2, p. 24. Additionally, Plaintiff has not stated any facts demonstrating that age was even a factor in the decision to terminate her and therefore cannot show that she was "otherwise discharged because of her age." Defendant cites the following exchange taken from Plaintiff's deposition:

> Q:   . . . Why do you think you were discriminated against because of your age?
> A:   Because they fired me.
> Q:   So but why do you think that your age played a role in the decision?

---

[2] The discovery responses also reveal that two custodians hired in 2016 were aged 58 and 56, and that these individuals remained actively employed at the time of the discovery responses. Record Document 17-3, p. 4.

A:    Well, at that time, when I said that I really didn't know for wrongful termination. I said my age because I guess I was getting older, I don't know.

Q:    Did anyone [at] work ever make any comments to you about your age?

A:    No.

Q:    Do you know who replaced you?

A:    No.

Q:    Is – as you sit here today is there anything else that you think lead [sic] you to believe that your age was part of why you were fired?

A:    When I was writing to EOC, I did believe that the age was a factor for me but I never was told that. That's my belief.

Q:    And is there anything else other than the fact that you are getting older, is there anything else that leads you to believe that? Anything that happened?

A:    No. Didn't nothing happen. At that time, I just don't know how to word it.

Q:    I understand. Now, what about now, is there anything that you've learned since you filed your EEOC charge that makes you think your age played a role in the termination?

A:    I do believe that I just don't have the evidence but I do believe that.

Id. at 20-21.

The Court finds that Plaintiff has failed to make a prima facie case of age discrimination. Plaintiff admittedly has no evidence that she was discharged because of her age and of the five individuals hired after Plaintiff's termination, four were within the protected class and two were older than Plaintiff at the time of her termination. The Court fails to see how such evidence could give rise to a finding of age discrimination. See e.g. Powers v. Woodlands Religious Cmty. Inc., 323 F. App'x 300, 303 (5th Cir. 2009) (rejecting an ADEA claim where the plaintiff's position was absorbed by three individuals who were over forty years of age, though one individual was younger than the plaintiff). Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's ADEA claim.

## 2. Disability Discrimination

The ADA prohibits employers from discriminating against employees due to a disability as defined by the Act. Rodriguez v. Eli Lilly & Co., 820 F.3d 759, 764 (5th Cir. 2016) (citing 42 U.S.C. § 12112). In an action alleging discriminatory termination, the employee can either present direct evidence of discrimination or proceed under the McDonnell Douglas burden-shifting framework. Id. Here, Plaintiff does not claim to have direct evidence of disability discrimination, and briefs the issue using the burden-shifting framework. To make a prima facie case under this framework, Plaintiff must show: (1) she had a disability, (2) she was qualified for the job, and (3) that she was subject to an adverse employment decision on account of her disability. E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 695-97 (5th Cir. 2014) (citing Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 853 (5th Cir. 1999)). Here, for purposes of the motion, Defendant does not dispute that the first two elements are met. Record Document 14-4, p. 7.

The third element requires Plaintiff to show that she was subject to an adverse employment action on account of her disability. It is undisputed that Plaintiff suffered an adverse employment action; however, Plaintiff offers nothing to show a causal nexus. To the contrary, Plaintiff admitted in her deposition that, until the time she was terminated, she experienced nothing that she considered to be discriminatory at her workplace. Record Document 14-2, p. 9. Plaintiff stated that her requests for FMLA leave, which she took because of her alleged disability, were always approved, and she did not experience "any problems" with the process. Id. at 13, 21. She also testified that no one made negative

comments about her taking leave. Id. at 13.  The following exchange occurred at Plaintiff's

deposition:

> Q:    And why did you think that your disability led to your termination?
> A:    Why do I think that?
> Q:    Yeah.
> A:    Because as my age I was going to older and a disability that I was
>        accumulating over the time I was working there but [sic] - -
> Q:    When I say that you were accumulating, do you mean to [sic] leave
>        or the - -
> A:    The leave, yes. Just after I took the leave that's, like, when they fired
>        me, two years later.
> Q:    And we had already talked about the fact that no one made any
>        comments to you about your leave, did anybody make any comments
>        to you about your disability?
> A:    No.
> Q:    So other than the fact that you had the disability and you had to take
>        some leave for that disability is there any other reason that you think
>        those things led to your termination?
> A:    Yes.
> Q:    What?
> A:    What? Answer that -
> Q:    Oh, okay. I'm sorry.
> A:    Do that again for me.
> Q:    Let me say it over again. So you've told me that you think because
>        you had a disability and it requires you to have leave that those are
>        the reasons that you were terminated?
> A:    That's the reason [I] believe that I was terminated, yes.
> Q:    And were there any other comments or actions or anything else that
>        you can think of that lead [sic] you to believe your disability played a
>        role in your termination?
> A:    I don't know exactly how to answer that.
> Q:    Okay. How about this: Have you told me now all of the reasons that
>        make you think your disability played a role then [sic] your
>        termination?
> A:    Yes.

Record Document 14-2, p. 22-24.

Plaintiff simply never articulates any facts suggesting she was terminated because she had a disability. Nor does Plaintiff's counsel offer argument on the prima facie case. See Record Document 17, pp. 8-10. Because Plaintiff has failed to make a prima facie case of disability discrimination, summary judgment is **GRANTED** as to this claim.[3]

### 3. FMLA Claim

Plaintiff claims that she was certified by her physician to take intermittent leave under FMLA in 2013, and that she had increased the amount of leave she was using over time. Record Document 17-1, p. 1. In her opposition to Defendant's motion, she suggests that she was fired because she continued to have health problems, continued to require medical leave, and her physician would likely extend her FMLA certification for another year. Record Document 17, p. 6. Defendant moves for summary judgment because it claims Plaintiff has no facts to suggest that her termination was motivated by her use of FMLA leave and she can therefore neither make a prima facie case, nor can she demonstrate pretext.

The FMLA makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," and to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. 2615(a). Plaintiff does not claim to have direct evidence of discriminatory or retaliatory intent; accordingly, the Court uses the

---

[3] Though Plaintiff never clearly articulates her ADA theory, the Court would note for the record that "a request for FMLA leave is not a request for a reasonable accommodation under the ADA." Acker v. Gen. Motors, L.L.C., 853 F.3d 784, 791 (5th Cir. 2017).

McDonnell–Douglas burden-shifting framework to analyze Plaintiff's claim. Under this framework, Plaintiff must first establish a prima facie case by showing that: "1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge." Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005). If Plaintiff makes this showing, the burden would then shift to Defendant to articulate a legitimate, nondiscriminatory reason for the termination. If Defendant succeeds, Plaintiff would then be required to show that Defendant's articulated reason is a pretext for discrimination.

Defendant acknowledges that Plaintiff took FMLA leave and that she was discharged. Record Document 14-3. Thus, the first and second elements of her prima facie case are met. As to the third element, Plaintiff relies on the close proximity between her use of FMLA leave and her termination to establish a causal link. She specifically claims that she was approved to take FMLA leave in July 2013 and, "at first," she was using approximately one day each month. Document 14-2, pp. 11-12; 17-1, pp. 1, 3. Plaintiff alleges that, by the time she was terminated, she was using 4-6 days per month. Id. at 1. She claims that she took FMLA leave on March 7, 2015, was suspended due to the investigation on March 10, 2015, and took an additional 3 days of leave during her suspension. Id. Plaintiff was discharged on March 14, 2015. Record Document 1, p. 2; 14-3, p. 4.

"When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination." Mauder v. Metro. Transit Auth. of Harris Cty., Tex., 446 F.3d

574, 583 (5th Cir. 2006) (citing Wilson v. Lemington Home for the Aged, 159 F. Supp. 2d

186, 195–96 (W.D. Pa. 2001)). Here, the temporal proximity between Plaintiff's FMLA leave

and her termination was "very close." Accordingly, the Court finds that it is sufficient to

establish the causal link required for the prima facie case. See Leal v. BFT, Ltd. P'ship, 423

F. App'x 476, 479-80 (5th Cir. 2011) ("Because Leal was terminated during her exercise

of FMLA rights, we conclude that the 'temporal proximity' between her FMLA leave and the

adverse action was 'very close' and is sufficient to establish the necessary causal link for

a prima facie case."); Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001) (finding

a time lapse of five days sufficient).

Next, Defendant must produce a legitimate, nondiscriminatory reason for Plaintiff's

termination. This burden is one of "production, not persuasion," and involves no credibility

assessment. Dutton v. Univ. Healthcare Sys., L.L.C., 136 F. App'x 596, 600 (5th Cir. 2005)

(quoting Reeves, 530 U.S. at 142). Defendant proffers the following reason for Plaintiff's

termination: "an investigation into alleged misconduct by custodians working on the

graveyard shift revealed Miller spent two and a half hours in a restroom, which is [a]

violation of Sam's Town policies prohibiting loitering and wasting time." Record Document

14-4, p. 10.

Defendant claims that it began an investigation into graveyard shift employees after

receiving complaints of employee misconduct. It further claims that, during this

investigation, it was discovered that Plaintiff spent over two and a half hours in a restroom

during her shift, which constitutes wasting time, loitering, and unsatisfactory job

performance. Record Document 14-3, p. 4. A total of nine employees were discharged as a result of this investigation, including Plaintiff. Plaintiff herself acknowledged that an investigation occurred and that multiple staff members were terminated around the time of her discharge. Record Document 14-2, pp. 13, 18-19. If supported by admissible evidence, the Court would find Defendant's proffered reason to be legitimate and nondiscriminatory. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981) ("[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.").

In order to meet its burden of setting forth a legitimate, nondiscriminatory reason for Plaintiff's termination, Defendant produced: (1) the declaration of Kim Etland ("Etland"), the Vice President and General Manager of Sam's Town, Record Document 14-1, pp. 1-3; (2) an employee handbook, id. at 4-32; (3) the two written complaints which allegedly sparked the investigation into the graveyard shift employees, id. at 33-34; and (4) excerpts from Plaintiff's deposition, Record Document 14-2. Etland's declaration is the only evidence supporting Defendant's claim that Plaintiff was terminated because an investigation revealed that she loitered in a restroom during her shift, and Plaintiff challenges that portion of the declaration in her Motion to Strike.

## A. Etland's Declaration

Plaintiff's Motion to Strike [Record Document 18] objects to any reference by Defendant concerning "observations" of Plaintiff spending excessive time cleaning a restroom. Specifically, Plaintiff's motion references the portion of Etland's declaration which

states that Plaintiff "was observed during the investigation spending over two and [a] half hours in a restroom during her shift." Record Document 14-1, p. 3. Plaintiff complains that Etland does not provide the date of any observation and never avers that she actually saw a film of Plaintiff committing any violation or herself witnessed Plaintiff commit any violation. Thus, Plaintiff argues, Etland's declaration is hearsay and not based on personal knowledge.

Defendant responds that Etland's statement is not hearsay because it is not offered for the truth of the matter, but is instead offered to show her state of mind in making the termination decision. Record Document 21. Defendant does not respond to Plaintiff's argument that the declaration is not based on personal knowledge.

Federal Rule of Civil Procedure 56(c)(4) states, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." While the Fifth Circuit has found that personal knowledge can be inferred from a declarant's position and the "nature of their participation in the matters to which they swore," DIRECTV, Inc. v. Budden, 420 F.3d 521, 530 (5th Cir. 2005) (quoting Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990)), it has also noted that "[a]ffidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." Thomas v. Atmos Energy Corp., 223 F. App'x 369, 374 (5th Cir. 2007) (quoting El Deeb v. Univ. of Minn., 60 F.3d 423, 428 (8th Cir. 1995)).

Here, Etland's declaration does not provide the necessary factual support for the Court to determine that she has the requisite personal knowledge. Etland does not explain who observed Plaintiff, by what means Plaintiff was observed, or how this information was reported to her. See Gibson v. Liberty Mut. Grp., 129 Fed. Appx. 94, 95 (5th Cir. 2005) (finding that a district court properly struck a portion of an affidavit stating the affiant "learned that" something occurred, because it was not based on personal knowledge). Accordingly, Plaintiff's Motion to Strike is **GRANTED** as to the challenged portion of Etland's declaration. Because this portion of the declaration is the only evidence proffered by Defendant to explain exactly why it terminated Plaintiff, Defendant has failed to provide a legitimate, nondiscriminatory reason for Plaintiff's termination. Moreover, even if the Court were to consider Etland's declaration, it would not provide sufficient evidence for the Court to grant summary judgment on Plaintiff's FMLA claim.

Assuming the Court were to find Defendant's evidence sufficient to show a legitimate, nondiscriminatory reason for Plaintiff's termination, Plaintiff would then be required to present evidence sufficient to raise a jury question that Defendant's reasons were pretextual. Shirley v. Precision Castparts Corp., 726 F.3d 675, 683 (5th Cir. 2013). "At summary judgment, '[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive.'" E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 702 (5th Cir. 2014) (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)).

Here, Plaintiff was allegedly fired for spending two and a half hours in a restroom. She denies that she spent two and a half hours in a restroom and thus argues that Defendant's reason for terminating her was false. See Record Document 17, pp. 5-6; 14-2, p. 15. Ultimately, then, whether Plaintiff committed this act and violated Defendant's employment policies is an issue of fact. Aside from Plaintiff's own denial, she notes other circumstances that cast doubt on Defendant's allegation. First, she complains that she was never allowed to see any surveillance video[4] showing her spending two and a half hours in a restroom, and the video was not provided during discovery, despite being requested. Record Document 17-1, p. 1; 17-6, p. 3. Plaintiff also notes that, while Defendant offers the two complaints that allegedly sparked the investigation into the graveyard shift employees as support for its motion, Plaintiff is not named in those complaints, though at least nine other employees are named. See Record Document 14-1, pp. 33-34. She also

_____

[4] In response to Plaintiff's Motion to Strike, Defendant claims, "Etland did not state that she viewed a video nor has Defendant represented to this Court that a video of the incident was ever utilized by Sam's Town in making the termination decision." Record Document 21, p. 2. However, Plaintiff attached to her opposition a document from the Office of Legal Counsel of Sam's Town, addressed to the EEOC, which includes multiple references to surveillance footage, including the following sentence: "Considering the indisputable evidence that Ms. Miller was caught on surveillance video spending 2 ½ hours in the customer restroom outside of her break time, coupled with the evidence that Ms. Miller was granted and used intermittent FMLA throughout her employment, it is the position of the employer that Ms. Miller's charges of age and disability discrimination are unfounded." Record Document 17-4, p. 4. Additionally, Plaintiff attached a document that appears to be a record of a due process meeting in which an individual named Gary states, "If I have video evidence that shows you in the restrooms for longer than 3 hours would you agree." Record Document 17-5, p. 2. Moreover, Etland herself claims that Plaintiff "was observed," presumably on the surveillance video referenced in the other documentation. Thus, the Court finds Defense counsel's argument that a video was never used in the termination decision to be confusing, if not somewhat disingenuous.

claims that she was the only person fired as a result of the investigation who was not named in the anonymous complaints, and this appears to be accurate. Record Document 17, p. 2; 17-4, p. 2. Plaintiff further notes her lack of prior disciplinary history, claiming that throughout her entire employment, she never received any disciplinary action or warning for poor work performance and her performance evaluations were always satisfactory. Record Document 1, p. 2; 17-6, p. 2.[5] This claim is difficult to reconcile with the listed reason in Plaintiff's separation notice that she was discharged due to "repeated performance related breakdowns." Record Document 17-4, p. 9.

Defendant argues that "the focus of the pretext inquiry is not whether Miller actually spent two and a half hours in the restroom, but whether Sam's Town reasonably believed she did, and acted on that basis." Record Document 14-4, p. 12. It cites a number of cases for this conclusion, and specifically argues that Clark v. Boyd Tunica, Inc., 665 F. App'x 367 (5th Cir. 2016), is "on point." In Clark, the plaintiff tripped at work and was injured. After tripping, she was taken to a clinic to have her ankle examined, and while there, the clinic also took a blood and urine sample for testing. The urine sample tested positive for alcohol, and the plaintiff was ultimately terminated as a result. Clark, 665 F. App'x at 368-71. The plaintiff denied consuming alcohol and claimed the positive sample resulted from her consumption of prescription medication. Id. at 371. The court found plaintiff's argument insufficient to show pretext, noting that "[t]he focus is not whether the alcohol in Clark's sample was, in fact, attributable to her improper consumption of alcohol, but whether

---

[5] See also Record Document 5, p. 3 (Defendant's Answer, in which it admits that Plaintiff's performance evaluations were satisfactory).

Sam's Town reasonably believed it was and acted on that basis." Id. at 371–72. Notably, the fact that the sample tested positive for alcohol was not in dispute; rather, it was the cause of that positive result that was disputed. The court noted that the employer "went through a reasoned process" to determine whether there were other possible causes for the positive sample and was told by the testing laboratory that there were not. Ultimately, the court concluded,

> In the absence of any alternative explanation for the positive result, Sam's Town had to decide whether to credit Clark's statements and its subjective perceptions or to credit the statements of Quest's lab scientist and the objective result of her positive alcohol sample. Sam's Town's decision to credit the latter was reasonable under the circumstances and does not serve to establish pretext.

Id. at 372.

Unlike the Fifth Circuit in Clark, this Court has no such established facts or evidence on which to rely to determine that Defendant behaved reasonably and in good faith. Instead, the Court has two anonymous complaints, neither of which name Plaintiff, and Etland's declaration, which simply states that Plaintiff "was observed" spending two and a half hours in a restroom. The basis for that allegation is not explained. Etland references an investigation into the anonymous complaints, but does not explain what that investigation entailed, or by whom and through what means Plaintiff "was observed" in the restroom. The Court has nothing from any individual who actually took part in the investigation or who claims to have seen Plaintiff in the restroom. The other cases cited by Defendant are distinguishable for the same reasons. See e.g. Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 379 (5th Cir. 2010) (noting that the employer had "considerable

evidence" that the plaintiff was violating company policy, including evidence from several employees that was "substantiated by both an internal and external investigation"). When confronted with the scant evidence provided by Defendant, this Court cannot say that Defendant reasonably believed that Plaintiff spent two and a half hours in the restroom and acted on that basis.

Thus, as evidence of pretext, Plaintiff has shown: (1) doubt as to whether she actually engaged in the underlying infraction (based on her own denial and Defendant's lack of support for the termination decision); (2) a decade-long employment history during which she received only satisfactory performance reviews, and (3) the close temporal proximity between her use of FMLA leave and her termination. Thus, even assuming Defendant had met its burden of providing a legitimate, nondiscriminatory reason for Plaintiff's termination, viewing the evidence in the light most favorable to Plaintiff, this Court would nonetheless find that there are genuine issues of material fact regarding Plaintiff's FMLA claim. Accordingly, summary judgment is **DENIED** as to this claim.

## 4. Motions to Strike

Plaintiff's Motion to Strike [Record Document 18], which this Court has already granted in part, further seeks an order directing Defendant to strike Exhibit A to the declaration of Kim Etland used in support of Defendant's summary judgment motion. Exhibit A is identified as a "Boyd Team Member Handbook in effect during the relevant timeframe," Record Document 14-1, p. 2, and can be found at Record Document 14-1, pp. 4-32. Plaintiff claims that Defendant failed to authenticate this document in accordance

with Federal Rule of Evidence 901(a). She argues that the attached handbook was published in 2016, one year after her termination, and differs from the handbook disclosed to her during discovery. Because of this, Plaintiff argues that the handbook cannot be used to show policies in effect during the time of her employment.

The Court does not rely on the handbook in resolving Defendant's Motion for Summary Judgment; therefore, Plaintiff's motion as to consideration of the handbook is **DENIED as moot** at this time.

Defendant filed a Motion to Strike [Record Document 22] seeking an order striking Plaintiff's Statement of Undisputed Facts and Response to Defendant's Statement of Undisputed Facts [Record Document 17-6], which is attached to Plaintiff's opposition to Defendant's Motion for Summary Judgment. Defendant complains that Plaintiff's statement of facts does not provide citations to record evidence. In response to Defendant's motion, Plaintiff filed a document which correlates her alleged facts to exhibits in the record. See Record Document 25. Therefore, Defendant's Motion to Strike is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to Plaintiff's claims under the ADEA and ADA, and these claims are hereby **DISMISSED with prejudice**. The motion is **DENIED** as to Plaintiff's FMLA claim.

Additionally, Plaintiff's Motion to Strike [Record Document 18] is hereby **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to the challenged portion of Kim

Etland's declaration, but **DENIED as moot** as to the employee handbook. Defendant's Motion to Strike [Record Document 22] is **DENIED.**

**THUS DONE AND SIGNED** this ⁄M day of February, 2018 in Shreveport, Louisiana.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE